**Michael J. CONROY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 24, 1997.

Decided April 18, 1997.

Ira Weiss and John H. Rushford, Pittsburgh, for petitioner.

Randall S. Brandes, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Sanford Kelson, Pittsburgh, for intervenor, Borough of Forest Hills.

Before FRIEDMAN and LEADBETTER, JJ., and LORD, Senior Judge.

LEADBETTER, Judge.

Michael Conroy (Claimant) appeals the order of the Unemployment Compensation Board of Review (Board) denying him unemployment compensation. We conclude that Claimant is eligible for compensation and reverse.

In November of 1993, Claimant was hired by the Borough of Forest Hills (Intervenor or Borough) to act as Police Chief for the Borough. As part of his duties as Police Chief, Claimant drafted the Manual of Policy and Procedures for the Borough Police Department (Manual). This Manual set out the duties and responsibilities of all members of the Police Department and was adopted by the Borough Counsel. According to the Manual, the Police Chief has a policy-making role:

The Chief shall consult with the Mayor concerning the plans and policies to be observed in police operations. . . .

The Chief shall have the power and authority to prescribe, promulgate, and enforce policies and regulations for the government of the Police Department which, however, shall not be inconsistent with Federal, State or Borough laws and ordinances.

The Chief shall formulate all policy relating to the Police Department, and shall endeavor to have all policy statements published in the policy and procedures manual.

The Board found that, "Claimant was aware he worked at the will of the Mayor ... [and that he] performed the required policy-making and advisory duties of the Chief of Police while employed by the Boro." *Conroy v. Boro of Forest Hills* (No. B–96–6–S–319, filed August 13, 1996), slip op. at 2. In February of 1996, Claimant was terminated from employment with the Borough.[1] He filed for unemployment compensation and was denied benefits by the Pittsburgh Job Center South (Job Center). The Referee reversed the Job Center order and granted benefits to Claimant. The Board then reversed the order of the Referee, and it is this denial of benefits that Claimant now appeals.

Section 1201(b)(9) of the Unemployment Compensation Law (Law)[2] provides that:

Individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) a major nontenured policymaking or advisory position . . .

may not receive unemployment compensation. Based upon the duty description for the Police Chief contained in the Manual, the Board found that Claimant had been officially designated as a nontenured, policy-making or advisory position and, thus, was not entitled to unemployment compensation. *Id.* at 3.

Claimant argues that, as Police Chief, he had no actual policy-making powers, so he should not be excepted from entitlement to unemployment compensation. In making this argument, Claimant relies upon this Court's opinion in *Zerbe v. Unemployment Compensation Bd. of Review*, 167 Pa. Cmwlth. 602, 648 A.2d 1295 (1994), *rev'd*, 545 Pa. 406, 681 A.2d 740 (1996). However, in

1. The circumstances of Petitioner's separation from the Borough are not at issue in this case.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 911(b)(9).

*Zerbe v. Unemployment Compensation Bd. of Review*, 545 Pa. 406, 681 A.2d 740 (1996), the Pennsylvania Supreme Court interpreted the same statutory language at issue in this case,[3] and held that:

> [n]othing in the language of [the Section] requires a factual determination as to whether the unemployment compensation claimant actually performed major policymaking or advisory functions. Thus, the [Section] exclusion from unemployment compensation benefits is expressly dependent upon a claimant's position being *designated* as a major nontenured policymaking or advisory position. To hold otherwise goes contrary to the clear wording of the statute.

*Id.* at 413, 681 A.2d at 743 (emphasis added); *see also Gahres v. Unemployment Compensation Bd. of Review*, 61 Pa.Cmwlth. 114, 433 A.2d 152, 153–54 (1981). Accordingly, Claimant's actual activities as Borough Police Chief are immaterial to the determination of whether he is entitled to unemployment benefits.

■ The only question properly before us on review is whether the position of Forest Hills Police Chief was designated a major nontenured policymaking or advisory position pursuant to the laws of this Commonwealth, and we hold that it was not.

■ A designation is made pursuant to law if it is "by the words of a statute, regulation, executive order or the like." *Id.* For example, a designation made pursuant to law has been found where the designation is contained in a Management Directive made at the direction of the Governor. *Zerbe*, 545 Pa. at 412–13, 681 A.2d at 743; *Bowe v. Unemployment Compensation Bd. of Review*, 83 Pa.Cmwlth. 221, 477 A.2d 587, 589 (1984); *Ging v. Unemployment Compensation Bd. of*

*Review*, 84 Pa.Cmwlth. 244, 479 A.2d 37, 39 (1984). It is not necessary that the designation contain the precise words "major" or "policymaking" or "advisory," *Gahres*, 433 A.2d at 154, although it can be done that way. *See, e.g., Ging*, 479 A.2d at 39 (in which the Directive at issue listed certain positions as "major nontenured policymaking or advisory").

In the present case, the Board contends that the job description contained in the Manual amounts to a designation pursuant to the laws of this Commonwealth. In support of this contention, the Board argues that since: (1) the Borough Code (Code)[4] is a law of the Commonwealth; (2) the Code grants the Borough Council the power to enact resolutions;[5] and (3) the Borough of Forest Hills resolved that a Manual be established for the Police Department,[6] any designation in the Manual is a designation made pursuant to the laws of this Commonwealth.

■ We find Respondent's analysis insufficient, as it does not consider the underlying purpose of the Law. As we said in *Gahres:*

> The logic of [the Law] ... is plain. The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected.

*Gahres*, 433 A.2d at 154. Although it is not essential that the designation be made prior to an employee's assumption of his post *see,*

---

**3.** Specifically, the Supreme Court interpreted § 1002(11) of the Law, 43 P.S. § 892(11). The language of § 1002(11) and § 1201(b)(9) of the Law is identical. Section 1002(11) applies to employees of the Commonwealth, whereas § 1201(b)(9) applies to employees of political subdivisions of the Commonwealth.

**4.** Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

**5.** Section § 1006(3) of the Code, 53 P.S. § 46006(3) ("It shall be the duty of the borough council ... [t]o enact, revise, repeal and amend such bylaws, rules, regulations, ordinances and resolutions, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough and to provide for the enforcement of the same").

**6.** Resolution No. 881.

*e.g., Ging,* we find that it is essential that the designation be more than a functional description of job duties, even where that description is, in some attenuated way, made pursuant to the laws of this Commonwealth. It must, at a minimum, be a written statement of policy which has the clear and intended effect of establishing the job tenure and employment status attached to the position. Moreover, the statement must be made by an official or entity with authority to set such terms.

In the present case, the description relied upon by the Board as an official designation, drafted by Claimant himself, merely lists the Police Chief's functions. It clearly was not intended to relate to the Chief's job security, nor could it reasonably be read to provide the requisite "signpost" described by *Gahres.*

Because we find that the description contained in the Manual does not amount to a designation made pursuant to the laws of this Commonwealth, the order of the Board is reversed.